**FIRST DIVISION**
**PHIPPS, P. J.,**
**BOGGS and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 4, 2016**

# In the Court of Appeals of Georgia

A15A1734. BALLISTICS RESEARCH, INC. et al. v. BRI
         FUNDING, LLC.

PHIPPS, Presiding Judge.

Ballistics Research, Inc., Ballistics Blocks, LLC, Wayne Orr, and James Orr (collectively, "defendants") appeal from the trial court's order awarding BRI Funding, LLC, punitive damages in excess of the statutory cap in OCGA § 51-12-5.1 (g). Because BRI Funding cannot recover excess punitive damages, we vacate the award and remand for further proceedings.

This case is before us a second time.[1] The pertinent facts, which are fully outlined in *Ballistics Research I*, show that beginning in September 2009, several

---

[1] See *Ballistics Research v. BRI Funding*, 330 Ga. App. XXV (2014) (unpublished opinion, Case No. A14A1074) ("*Ballistics Research I*").

investors agreed to loan money to Ballistics Research.[2] In exchange, Ballistics Research granted the investors a security interest in all patents and intellectual property rights that it owned or might own in the future.[3]

Ballistics Research did not timely repay the loans, and on May 10, 2010, the investors decided to assign their rights under the loan agreements to BRI Funding, an as-yet-unformed company they planned to create for the purpose of bringing suit.[4] Pursuant to the assignment:

> All of the . . . parties assign their rights under the September '09 Agreement effective as of May 18, 2010 to a Georgia limited liability company expected to be formed and called BRI Funding, LLC . . . so that [BRI Funding] can either accept the voluntary assignment of Ballistics' patents or act as the sole plaintiff in a lawsuit to be filed [against] Ballistics and perhaps its members.[5]

---

[2] *Ballistics Research I*, supra, slip op. at 3, 5.

[3] Id. at 4-5.

[4] Id. at 5-6.

[5] Id. at 6.

2

At some point after May 10, 2010, the investors incorporated BRI Funding.[6] On January 17, 2011, they executed an amended document re-assigning to the newly formed company their rights to sue Ballistics Research. Approximately one month later, BRI Funding filed suit against Ballistics Research and Wayne Orr, seeking, among other things, damages for breach of contract and protection for its assigned interest in the patents. During discovery, however, BRI Funding learned that Ballistics Research had transferred its patents to Ballistics Blocks on April 29, 2010. BRI Funding thus amended the complaint, adding Ballistics Blocks and James Orr to the litigation and asserting several new claims, including claims for fraudulent transfer, fraud, and punitive damages.[7]

BRI Funding subsequently moved for summary judgment. The trial court granted the motion and awarded the company compensatory damages and attorney fees, as well as punitive damages in the amount of $870,407.25. On appeal, we affirmed the trial court's judgment as to all claims and damages *except* punitive

---

[6] The parties have not provided us with a record reference reflecting the date on which BRI Funding was incorporated. The evidence shows, however, that the incorporation occurred after May 10, 2010. See id. at 6 (May 10, 2010 assignment agreement refers to BRI Funding as a "Georgia limited liability company *expected to be formed*") (emphasis supplied).

[7] Id. at 6-7.

3

damages. We explained that "punitive damages are limited [by statute] to a maximum of $250,000 for any tort action, unless the trier of fact finds that 'the defendant acted, or failed to act, with the specific intent to cause harm.'"[8] We further noted that to overcome the statutory cap, a fact finder must make a separate finding as to specific intent.[9] In this case, the trial court determined that the defendants intended to defraud BRI Funding. But "it did not find that [the defendants] acted with the specific intent to cause BRI Funding harm."[10] We thus "vacate[d] the punitive damages award and remand[ed] with direction that the trial court consider whether Ballistics Research acted, or failed to act, with the *specific intent* to cause harm such that punitive damages were warranted beyond the $250,000 cap provided for in OCGA § 51-12-5.1 (f)."[11]

---

[8] Id. at 14-15, quoting OCGA § 51-12-5.1 (f). See also OCGA § 51-12-5.1 (g) (establishing $250,000 cap on punitive damages).

[9] *Ballistics Research I*, supra, slip op. at 15. See *McDaniel v. Elliott*, 269 Ga. 262, 265 (3) (497 SE2d 786) (1998) (establishing bright-line rule that trier of fact must make separate finding of specific intent to cause harm to award punitive damages in excess of $250,000).

[10] *Ballistics Research I*, supra, slip op. at 15.

[11] Id. at 16 (punctuation omitted; emphasis in original).

The trial court refused to accept new evidence on remand, instead basing its decision on the record before it. After reviewing the evidence, the court determined that the defendants acted with specific intent to harm BRI Funding and reinstated the $870,407.25 punitive damages award. The defendants now appeal a second time, arguing that they could not have intended to harm BRI Funding because the company did not exist when the tortious acts occurred.

We agree. As recounted above, we vacated the original punitive damages award because the trial court exceeded the statutory cap without finding that the defendants specifically intended to harm BRI Funding.[12] Although the trial court made the requisite finding on remand, the record does not support that decision. BRI Funding is an assignee created for the sole purpose of suing the defendants on the investors' behalf. The company does not contest its status as an assignee or argue that its recovery rights arose from something other than assignment. In fact, BRI Funding admits that "the acts supporting the finding of specific intent occurred before [its] existence." Given these circumstances, the defendants could not have specifically intended to harm BRI Funding.

---

[12] Id. at 15-16.

Moreover, "under Georgia law a right to punitive damages cannot be assigned."[13] Citing this principle, the defendants claim that BRI Funding's status as an assignee precludes *any* punitive damages recovery. But the defendants did not raise this argument in the first appeal, and although we vacated the initial punitive damages award, we remanded the case for consideration of one limited issue: whether a punitive damages award *in excess of* the $250,000 cap is appropriate here. In reaching this decision, we tacitly approved the trial court's award of general punitive damages (up to the statutory cap) – a decision that we cannot reconsider at this point.[14]

The award of *excess* punitive damages, however, is squarely before us. And the defendants are correct that BRI Funding's sole status as an assignee undermines the

---

[13] *Canal Indemnity Co. v. Greene*, 265 Ga. App. 67, 73 (3) (593 SE2d 41) (2003). See also *Empire Fire & Marine Ins. Co. v. Driskell*, 264 Ga. App. 646, 649 (3) (592 SE2d 80) (2003) (Georgia law prohibits assignment of punitive damages claims).

[14] See *Empire Fire*, supra at 648 (1) (appellants cannot relitigate issue resolved against them on prior appeal); *Ovrevik v. Ovrevik*, 254 Ga. App. 756, 759-760 (2) (b) (564 SE2d 8) (2002) (law of the case prevented court from reaching newly raised argument during second appeal where case was previously remanded for limited purpose and evidentiary posture had not changed).

excess award.[15] To find otherwise would ignore the defendants' lack of tortious conduct towards BRI Funding. The trial court erred in awarding punitive damages in excess of $250,000. Accordingly, we vacate the punitive damages award and remand for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. Boggs and Mercier, JJ., concur.*

---

[15] See *Empire Fire*, supra at 649 (3).